UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Theodore C. Smith, Jr.,

    Plaintiff,

v.                                          Civil Action No. 2:19–cv–208-cr-jmc

Michael Touchette,
Joshua Rutherford,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 9)

Plaintiff Theodore C. Smith, Jr., a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by instructing him to prepare a pork product, against his Muslim faith, and failing to prevent cross-contamination in the prison kitchen. (Doc. 5 at 21.) He further asserts that Defendants have failed to provide adequate Jumu'ah prayer services "free of interruption or delay by correctional staff." (*Id.* at 20.) Smith names as Defendants Michael Touchette, former Commissioner of the Vermont Department of Corrections (DOC), and Joshua Rutherford, former superintendent of the Northern State Correctional Facility (NSCF).[1] (*Id.* at 2.) He seeks injunctive and monetary relief. (*Id.* at 13, 16.)

---

[1] Since the filing of this suit, Michael Touchette has stepped down as Commissioner of the DOC and Joshua Rutherford is no longer acting as superintendent of NSCF. As both positions are currently occupied by interim officials, under Federal Rule of Civil Procedure 25(d), the "Commissioner of the Vermont DOC" is automatically substituted for Touchette and "Superintendent of NSCF" is automatically substituted for Rutherford with respect to the official-capacity claims brought by Smith.

Presently before the court is Defendants' unopposed Motion to Dismiss Smith's Complaint. (Doc. 9.) For the reasons described below, I recommend Defendants' Motion to Dismiss (Doc. 9) be GRANTED.

## Background

In the Complaint, Smith alleges that he was a prep cook in the NSCF's kitchen from August to December 2018. (Doc. 5 at 23.) One day, while working in the kitchen, a full-time kitchen officer instructed him "to prepare a ham for a dinner function within the prison." (*Id.* at 21.) Smith asserts that he informed her "that he is a Muslim" and that he was concerned that cross-contamination of the pork products would occur, which would violate his religious beliefs. (*Id.*) He claims that he was "instructed to use the same utensils used to prepare regular meals." (*Id.*) He complied and grieved the incident but received "[n]o reasonable remedy." (*Id.*)

Smith also broadly alleges that DOC staff refuse to follow rules for Halal food preparation, such as not "separat[ing] dairy from meat products," "'bleed[ing]-out' specific cuts of meat," or maintaining "a contamination free 'zone' of the kitchen." (*Id.* at 23.) He avers that DOC staff are "insensitiv[e] to his religious needs and preferences." (*Id.*) Finally, he vaguely complains that the religious services available to Muslim inmates are inadequate. (*See* Doc. 5-1 at 1–2, 6.)

Smith seeks injunctive relief to "have nutri[ti]onal guidelines of . . . Plaintiff[']s particular version of Muslim/monotheistic faith . . . followed" as well as "[t]o have a service of Jum[u'ah] . . . free of interruption or delay by correctional

staff" and without "attitudes of staff 'souring' the experience." (Doc. 5 at 20.) He also seeks an award of "nominal, compensatory, and punitive" damages. (*Id.* at 15.)

## Analysis

### I. Standard of Review

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Id.* at 558. Because Smith is representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

On the other hand, "the appropriate vehicle to dismiss a cause of action for lack of standing is Federal Rule of Civil Procedure 12(b)(1)." *Young Advocates for Fair Educ. v. Cuomo*, 359 F. Supp. 3d 215, 229 (E.D.N.Y. 2019). "A case is properly dismissed for lack of subject[-]matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject-matter jurisdiction, the court must accept as true all factual allegations contained in the complaint. *See id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

## II.     42 U.S.C. § 1983

Smith brings his claims pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Smith alleges that Defendants have failed to prevent potential cross-contamination in the prison kitchen and failed to provide adequate Jumu'ah prayer services in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*.

### III.     Standing to Seek Injunctive Relief

Defendants argue that Smith lacks standing to pursue his claims because he has not alleged an injury-in-fact and because he fails to plausibly plead both a likelihood of future harm and the existence of an official policy. (Doc. 9 at 4–5, 9–10.) "[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury-in-fact must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted).

Furthermore, to meet the constitutional minimum of standing to seek injunctive relief, Smith must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). This requires a showing of "both [1] a likelihood of future harm and [2] the existence of an official policy or its equivalent." *An v. City of New York*, 16 Civ. 5381 (LGS), 2017 WL 2376576, at *2 (S.D.N.Y. June 1, 2017) (alterations in original) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)). "RLUIPA's

6

statutory provisions reflect this Article III standing requirement." *Wells v. McKoy*, 1:16-CV-00113 EAW, 2018 WL 6833665, at *4 (W.D.N.Y. Dec. 27, 2018).

A future harm is sufficiently likely if "[t]he injury or threat of injury" is "both real and immediate, not conjectural or hypothetical." *Shain*, 356 F.3d at 215 (alternation in original) (internal quotation marks omitted). A plaintiff seeking injunctive relief must show "a sufficient likelihood that he [or she] will again be wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (alteration in original) (quoting *Lyons*, 461 U.S. at 111). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . ." *Lyons*, 461 U.S. at 102 (second alteration in original) (internal quotation marks omitted); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's] injury requirement . . . ."). As for the second prong, district courts in the Second Circuit "have generally construed the existence of an official policy or its equivalent as coextensive with the 'policy' or 'custom' requirement of municipal liability under 42 U.S.C. § 1983." *D.H. v. City of New York*, 309 F. Supp. 3d 52, 67 (S.D.N.Y. 2018) (citing *An*, 2017 WL 2376578, at *3 (collecting cases)).

Here, Smith has not sufficiently alleged an injury-in-fact. He vaguely avers that the religious services available to Muslim inmates are inadequate and that he feels his religion is not taken seriously. (*See* Doc. 5-1 at 1–2, 6.) Specifically, he seeks injunctive relief "[t]o have a service of Jum[u'ah] . . . free of interruption or

7

delay by correctional staff" and without "attitudes of staff 'souring' the experience." (Doc. 5 at 20.) However, "[t]hat is not the type of 'concrete harm' required to establish standing to sue." *Adeyola v. Gibon*, 537 F. Supp. 2d 479, 481 (W.D.N.Y. 2008) (finding plaintiff's allegation that "[t]his experience has left [him] degraded and feeling that his religion was less valid than other religions" insufficient to establish standing (alterations in original)).

Similarly, Smith alleges that when he once prepared a pork meal in the prison kitchen, he was "instructed to use the same utensils used to prepare regular meals" and he was concerned about cross-contamination. (Doc. 5 at 21.) But he does not allege that the utensils were not washed between uses, that he witnessed any actual cross-contamination, or that he consumed any contaminated meals. As such, Smith's alleged injury is purely "conjectural and hypothetical." *Lujan*, 504 U.S. at 560. Likewise, Smith does not allege that the same utensils have or will again be used to prepare both pork and regular meals, nor does he allege that it is Defendants' policy to use the same utensils to prepare both meals.[2] Thus, any threat of future injury is speculative, and mere reference back to this isolated incident is insufficient to establish standing to seek the broad injunctive relief Smith requests. Finally, to the extent Smith requests prospective relief on behalf of other inmates, he lacks standing to do so. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The [Article] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may

---

[2] In fact, Smith attached to his Complaint a letter from the DOC stating it is their policy "to utilize separate utensils and disposable items" to prepare the pork meal. (Doc. 5-1 at 23.)

8

benefit others collaterally.  A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . .") (internal quotation marks omitted).  Accordingly, I recommend Smith's claims for injunctive relief be dismissed.

## IV.   Official-Capacity Claims for Damages

Defendants also move to dismiss Smith's claims against them in their official capacities.  (Doc. 9 at 8–9.)  Section 1983 allows suit against "persons."  State officers sued in their official capacity are not "persons" subject to suit under § 1983.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against that official but rather is a suit against the official's office."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  Accordingly, Defendants Touchette and Rutherford in their official capacities are not "persons" under § 1983 and Smith's claims against them must be dismissed.

In addition, the Eleventh Amendment[3] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of immunity by Congress.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  This protection also extends to suits for money damages

---

[3] The Eleventh Amendment bars federal suits against state governments by citizens of another state or foreign country as well as by a state's own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

9

against state officials in their official capacity. *See Brandon*, 469 U.S. at 471. The State of Vermont has not waived its Eleventh Amendment sovereign immunity. In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979). The Supreme Court has also held that RLUIPA does not waive state sovereign immunity under the Eleventh Amendment. *See Sossamon v. Texas*, 563 U.S. 277, 280 (2011). Consequently, Smith's claims against Defendants in their official capacities are barred.[4]

## V.     Individual-Capacity Claims for Damages

Defendants further argue that Smith's claims against them in their individual capacities should be dismissed. (Doc. 9 at 5–7.) "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). However, supervisory officials may not be held liable merely because they hold positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Richardson*

---

[4] To the extent that the DOC is a party to this suit, and given its status as a state agency, any claims brought against it are also barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity); *see also Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983." (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))).

*v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage in the prison chain of command is insufficient to implicate [prison officials] in a § 1983 claim." (internal quotation marks omitted)).

In order to prevail on a § 1983 cause of action against an individual, a plaintiff must establish some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Thus, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Smith's Complaint does not allege any facts from which the court can infer that Touchette and Rutherford were personally involved in the alleged constitutional violations. Beyond being named as parties, neither Touchette nor Rutherford's name appear anywhere in the text of the Complaint. Smith does not allege that either personally instructed him to use the same utensils to prepare the pork and regular meals (Doc. 5 at 21), demonstrated "insensitivity to his religious needs and preferences" (*id.* at 23), or otherwise directly participated in any unlawful action. He does not aver that either had a policy or custom of denying or delaying Muslim religious services such as Jumu'ah or to use the same utensils to prepare

both pork and regular meals. In fact, Smith does not even contend that they were personally aware of the alleged constitutional violations. *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011) (stating that defendants must become aware of the alleged unconstitutional acts while they are ongoing and capable of being remedied). Thus, because Smith fails to establish a connection between either Touchette or Rutherford and the alleged unconstitutional conduct, Smith's § 1983 claims for damages against them in their individual capacities should be dismissed for lack of personal involvement.

Finally, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise [of an institutionalized person]," 42 U.S.C. § 2000cc-1(a), "in a program or activity that received Federal financial assistance," *id.* § 2000cc-1(b)(1), or in a way that affects interstate commerce, *id.* § 2000cc-1(b)(2). Although prospective injunctive relief is available under the statute, "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014). Accordingly, I recommend Smith's claims for damages against Touchette and Rutherford be dismissed.

## VI.   Leave to Amend

A *pro se* plaintiff should ordinarily be granted the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). Here, it is not clear that Smith can state a

viable federal claim, "but [the Second] Circuit's precedent encourages giving [him] another opportunity." *Montpelier v. Green Mountain Care*, Case No. 2:19-cv-84, 2019 WL 5102715, at *3 (D. Vt. Oct. 11, 2019). Accordingly, I recommend that the court grant Smith leave to amend his Complaint.

Smith is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Accordingly, an Amended Complaint, if filed, must include all of Smith's factual allegations in their entirety and must set forth all the claims Smith has against all defendants and all the relief he seeks; reference back to the original Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont. *See* Fed. R. Civ. P. 8(a); L.R. 15(b). Equally important, an Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10. In the event Smith elects not to file an Amended Complaint, I recommend dismissal of all claims for the reasons set forth in this Report and Recommendation.

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 9) be GRANTED, and that Smith be granted leave to amend his Complaint within 30 days of the court's order on this Report and Recommendation. In the event an Amended Complaint is not filed within that 30-day period, this matter should be closed.

Dated at Burlington, in the District of Vermont, this 10th day of August 2020.

/s/ John M. Conroy            .
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).